1  **CONSTANTINE MARANTIDIS, CA Bar No. 173318**
   cmarantidis@lewisroca.com
2  **G. WARREN BLEEKER, CA Bar No. 210834**
   wbleeker@lewisroca.com
3  **KYLE W. KELLAR, CA Bar No. 294253**
   kkellar@lewisroca.com
4  **LEWIS ROCA ROTHGERBER CHRISTIE LLP**
   **655 N. Central Avenue, Suite 2300**
5  **Glendale, CA 91203-1445**
   **Telephone: (626) 795-9900**
6  **Facsimile:  (626) 577-8800**

7  Attorneys for Defendant and Counterclaimant
   DELTA SCIENTIFIC CORPORATION
8

9

10                    UNITED STATES DISTRICT COURT

11                   CENTRAL DISTRICT OF CALIFORNIA

12

13  MERIDIAN RAPID DEFENSE GROUP          Case No. 2:23-cv-07222-GW (PDx)
    LLC, a California limited liability
14  company,                              **DEFENDANT AND**
                                          **COUNTERCLAIMANT DELTA**
15              Plaintiff,                **SCIENTIFIC CORP.'S FIRST**
                                          **AMENDED ANSWER AND**
16        vs.                             **COUNTERCLAIMS TO**
                                          **MERIDIAN RAPID DEFENSE**
17  DELTA SCIENTIFIC CORPORATION,         **GROUP LLC'S COMPLAINT**
    a California corporation,
18
                Defendant.
19

20  DELTA SCIENTIFIC CORPORATION,
    a California corporation,
21
                Counterclaimant,
22
          vs.                             **Hon. George H. Wu**
23
    MERIDIAN RAPID DEFENSE GROUP
24  LLC, a California limited liability
    company,
25
                Counterdefendant.
26

27

28

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

122936387.2

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

LEWIS ROCA

Defendant and Counterclaimant Delta Scientific Corporation ("Delta") files its First Amended Answer to Plaintiff and Counterdefendant Meridian Rapid Defense Group LLC's ("Plaintiff" or "Meridian") Complaint in which Meridian asserts claims of infringement of United States Patent Nos. 7,918,622 ("the '622 patent") and 8,215,866 ("the '866 patent") (collectively, the "Asserted Patents"). Except as expressly admitted below, Delta denies all allegations and averments of the Complaint, and otherwise responds as follows:

### GENERAL DENIAL

Unless expressly admitted below, Delta denies each, and every allegation that Plaintiff has set forth in its Complaint.

### RESPONSE TO PLAINTIFF'S SPECIFIC ALLEGATIONS

Answering the specific allegations of Plaintiff's Complaint, Delta responds with the following paragraphs, which correspond sequentially to the paragraphs in Plaintiff's Complaint:

1. Upon information and belief, Delta admits that Plaintiff Meridian Rapid Defense Group LLC is a California limited liability company with its principal place of business at 177 E. Colorado Blvd., Suite 200, Pasadena, California 91105.

2. Delta admits that it is a California Corporation with its headquarters at 40355 Delta Lane, Palmdale, California 93551.

3. Delta does not challenge that this Court has subject matter jurisdiction under 38 U.S.C. § 1331 and 1338(a).

4. Delta does not challenge that this Court has personal jurisdiction over Defendant. Delta denies the remaining allegations in Paragraph 4.

5. Delta does not challenge that venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c), and 1400(b). Delta denies the remaining allegations in Paragraph 5.

-1-

122936387.2

1    6.    Delta is without knowledge or information sufficient to form a belief
2    as to the truth of the allegations in Paragraph 6 and, therefore, denies the same.

3    7.    Delta is without knowledge or information sufficient to form a belief
4    as to the truth of the allegations in Paragraph 7 and, therefore, denies the same.

5    8.    Delta is without knowledge or information sufficient to form a belief
6    as to the truth of the allegations in Paragraph 8 and, therefore, denies the same.

7    9.    Delta is without knowledge or information sufficient to form a belief
8    as to the truth of the allegations in Paragraph 9 and, therefore, denies the same.

9    10.    Delta is without knowledge or information sufficient to form a belief
10    as to the truth of the allegations in Paragraph 10 and, therefore, denies the same.

11    11.    Delta is without knowledge or information sufficient to form a belief
12    as to the truth of the allegations in Paragraph 11 and, therefore, denies the same.

13    12.    Delta is without knowledge or information sufficient to form a belief
14    as to the truth of the allegations in Paragraph 12 and, therefore, denies the same.

15    13.    Delta admits that it describes itself as the world's leading
16    manufacturer of vehicle access control equipment.  Delta further admits it has
17    manufactured and sold portable barriers, such as the MP5000, DSC1000, and
18    DSC1100.

19    14.    Delta admits that its barriers are portable.  Delta is without knowledge
20    or information sufficient to form a belief as to the truth of the remaining allegations
21    in Paragraph 14 and, therefore, denies the same.

22    15.    Delta admits the allegations in Paragraph 15.

23    16.    Delta admits the allegations in Paragraph 16.

24    17.    Delta admits the allegations in Paragraph 17.

25    18.    Delta admits the allegations in Paragraph 18.

26    19.    Delta admits the allegations in Paragraph 19.

27    20.    Delta admits that it is making, using, selling, and offering for sale the
28    TB100.  Delta further admits that it denies infringement, and it intends to continue

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

LEWIS ROCA

-2-

122936387.2

to sell the TB100.  Delta denies that the TB100 or any of its products infringe Plaintiff's Asserted Patents.  Delta is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 20 and, therefore, denies the same.

## COUNT 1
### (Alleged Infringement of U.S. Patent No. 7,918,622)

21.    Delta incorporates by reference each of the preceding paragraphs as if fully set forth herein.

22.    Delta denies that United States Patent No. 7,918,622 ("the '622 patent") is titled "Portable Perimeter Defense Systems."  Upon information and belief, the '622 patent states on its face that it is entitled "Portable Perimeter Defense System."

23.    Delta is without knowledge or information sufficient to form a belief as to the truth of allegations in Paragraph 23 and, therefore, denies the same.

24.    Delta admits that the '622 patent generally relates to portable perimeter defense systems.  Delta denies that the claims of the '622 patent, including claim 21, recite novel and inventive systems and methods.

25.    Delta admits the allegations in Paragraph 25.

26.    Delta denies the allegations in Paragraph 26.

27.    Delta admits the allegations in Paragraph 27.

28.    Delta denies the allegations in Paragraph 28.

29.    Delta denies the allegations in Paragraph 29.

30.    Delta denies the allegations in Paragraph 30.

31.    Delta denies the allegations in Paragraph 31.

32.    Delta denies the allegations in Paragraph 32.

33.    Delta denies the allegations in Paragraph 33.

34.    Delta admits that Figure 11 depicts a test configuration, where a heavy truck is about to collide with the TB100. Delta further admits that Figure 12 depicts

-3-

the heavy truck mid-collision. Delta denies the remaining allegations in Paragraph 34. In particular, Figure 12 shows that the TB100 is moved horizontally upon impact, contrary to the allegations in Paragraph 34 that any part of the TB100 is "to prevent horizontal movement of the barrier upon impact."

35.    Delta denies the allegations in Paragraph 35.

36.    Delta denies the allegations in Paragraph 36.

37.    Delta denies the allegations in Paragraph 37.

38.    Delta denies the allegations in Paragraph 38.

39.    Delta denies the allegations in Paragraph 39.

40.    Delta denies the allegations in Paragraph 40.

41.    Delta denies the allegations in Paragraph 41.

42.    Delta denies the allegations in Paragraph 42.

43.    Delta denies the allegations in Paragraph 43.

44.    Delta denies the allegations in Paragraph 44.

45.    Delta admits that it has at least a significant role in placing the TB100 in the stream of commerce in the United States, including in this District.  Delta further admits that it directs or controls the making, shipment, and sales of the TB100 into the United States, including use of established distribution channels around the United States, and through its own websites.  Delta denies the remaining allegations in Paragraph 45.

46.    Delta denies the allegations in Paragraph 46.

47.    Delta denies the allegations in Paragraph 47.

48.    Delta denies the allegations in Paragraph 48.

49.    Delta denies the allegations in Paragraph 49.

## COUNT 2
### (Alleged Infringement of U.S. Patent No. 8,215,866)

50.    Delta incorporates by reference each of the preceding paragraphs as if fully set forth herein.

-4-

122936387.2

51.     Delta admits that United States Patent No. 8,215,866 ("the '866 patent") is titled "Portable Perimeter Defense Barrier and System."

52.     Delta is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 52 and, therefore, denies the same.

53.     Delta admits that the '866 patent generally relates to portable perimeter defense barriers and systems.  Delta denies that the claims of the '866 patent, including claim 49, recite novel and inventive systems and methods.

54.     Delta admits the allegations in Paragraph 54.

55.     Delta denies the allegations in Paragraph 55.

56.     Delta admits the allegations in Paragraph 56.

57.     Delta denies the allegations in Paragraph 57.

58.     Delta denies the allegations in Paragraph 58.

59.     Delta admits that Figure 17 depicts a wheel assembly of the TB100. Delta denies the remaining allegations in Paragraph 59.

60.     Delta admits that Figure 18 depicts a zoomed-in image of the TB100 wheel assembly.  Delta denies the remaining allegations in Paragraph 60.

61.     Delta denies the allegations in Paragraph 61.

62.     Delta denies the allegations in Paragraph 62.

63.     Delta denies the allegations in Paragraph 63.

64.     Delta denies the allegations in Paragraph 64.

65.     Delta denies the allegations in Paragraph 65.

66.     Delta denies the allegations in Paragraph 66.

67.     Delta denies the allegations in Paragraph 67.

68.     Delta denies the allegations in Paragraph 68.

69.     Delta denies the allegations in Paragraph 69.

70.     Delta denies the allegations in Paragraph 70.

71.     Delta denies the allegations in Paragraph 71.

72.     Delta denies the allegations in Paragraph 72.

122936387.2

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

LEWIS ▢ ROCA

73.     Delta denies the allegations in Paragraph 73.

74.     Delta denies the allegations in Paragraph 74.

75.     Delta denies the allegations in Paragraph 75.

76.     Delta admits that it has at least a significant role in placing the TB100 in the stream of commerce in the United States, including in this District.  Delta further admits that it directs or controls the making, shipment, and sales of the TB100 into the United States, including use of established distribution channels around the United States, and through its own websites.  Delta denies the remaining allegations in Paragraph 76.

77.     Delta denies the allegations in Paragraph 77.

78.     Delta denies the allegations in Paragraph 78.

79.     Delta denies the allegations in Paragraph 79.

80.     Delta denies the allegations in Paragraph 80.

## PRAYER FOR RELIEF

Plaintiff's Prayer for Relief contains requests for relief to which no response is required.  To the extent a response is required, Delta denies that Plaintiff is entitled to any relief from Delta in connection with the Complaint, including, without limitation, the relief specified in Plaintiff's Prayer for Relief.

## DELTA'S AFFIRMATIVE DEFENSES

Delta asserts the following affirmative defenses to Plaintiff's Complaint. Delta reserves the right to amend its Answer to plead additional defenses including, but not limited to, those defenses revealed during discovery.  Delta does not assume the burden of proof where such burden is not legally upon it.  Without admitting or acknowledging that Delta bears the burden of proof as to any of the following, based upon information and belief, Delta asserts the following affirmative defenses:

-6-

122936387.2

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

LEWIS ROCA

## FIRST AFFIRMATIVE DEFENSE

### (Non-Infringement)

1.    Delta does not make, use, sell, offer for sale, or import into the United States, and has not made, used, sold, offered for sale or imported into the United States, any products or methods that infringe any valid claim of the Asserted Patents, either willfully, directly, indirectly, contributorily, through the doctrine of equivalents, or otherwise, and has not induced others to infringe any valid claim of the Asserted Patents.

## SECOND AFFIRMATIVE DEFENSE

### (Invalidity)

2.    Upon information and belief, and without prejudice to further amendment upon information found during discovery, each asserted claim of the '622 patent, and the '866 patent is invalid for failure to meet the conditions for patentability as set forth in Title 35 of the United States Code, including, but not limited to, 35 U.S.C. § 102, § 103, and/or § 112.

## THIRD AFFIRMATIVE DEFENSE

### (Prosecution History Estoppel)

3.    Upon information and belief, by reason of the proceedings before the United States Patent and Trademark Office ("USPTO") during the prosecution of the applications resulting in the issuance of the '622 patent and the '866 patent, namely, the admissions, representations and amendments made on behalf of the applicants for those patents, Plaintiff is estopped from extending the coverage of the asserted claims in the '622 patent and the '866 patent, including under the doctrine of equivalents, to cover the accused instrumentalities.

4.    For example, in the Office Action dated May 5, 2010, issued in the application that would mature into the '622 patent, the Examiner rejected claim 1 based on the brace of the claimed modular barrier of United States Patent No. 5,549,410.  In response to the Examiner's rejection, the application amended

claim 1 to claim a brace that is fixedly secured, once the barrier is positioned, to the aft side of the upright plate of the barrier, for preventing aft tilting under a force generated by an object impacting the front plate.

5.     Upon information and belief, this amendment of claim 1 specifically narrowed its scope from encompassing all bracing systems and limited the interpretation of claim 1 to the brace that was previously described.

## FOURTH AFFIRMATIVE DEFENSE

### (Patent Misuse)

6.     Upon information and belief, and as one example, Plaintiff improperly attempts to broaden the scope of asserted claim 21 of the '622 patent to cover noninfringing products, including Delta's TB100 bollard, by interpreting the "upright plate" as the *cylindrical* body of the TB100 bollard as shown in Figure 9 of Plaintiff's Complaint (reproduced below) and the "width of said base plate" as being the diagonal dimension of the apparently square baseplate of the TB100 bollard in Figure 13 of Plaintiff's Complaint (reproduced below).



Figure 9[10]

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

LEWIS ROCA



Figure 13[15]

7.      First, Plaintiff's interpretation of "upright plate" as covering a cylindrical upright is contrary to the plain and ordinary meaning of "plate" and unreasonable in light of the '622 patent.  Indeed, a plate is commonly understood to be a thin, flat sheet-shaped element, which is consistent with the '622 patent's disclosure that the "[f]ront surface 15 [of the front plate 3] preferably offers ballistic protection" for people standing behind the barrier.  The cylindrical upright in Delta's TB100 bollard is neither plate-shaped nor configured to offer an individual standing behind the cylindrical upright ballistic protection.  Indeed, the cylindrical upright in Delta's TB100 bollard is a near opposite shape as the "upright plate" described and claimed in the '622 patent.  The '622 patent also fails to re-define the term "plate" as covering non-plate shapes, such as a cylindrical shape.  The only description of the "front plate" or "upright plate" shows a thin, flat shape and the only dimensional example of the front plate provided in the '622 patent is that it is "approximately 3 feet tall and 2 feet wide," that is, rectangular.

8.      Further, Plaintiff's interpretation of "width of said base plate" is not only incorrect as being contrary to the plain and ordinary meaning of the term "width" but also because it would render claim 21 of the '622 patent invalid as anticipated by prior art known to Plaintiff as of the filing of its Complaint.  First, elementary math dictates that the width of a rectangle is the dimension along its shorter side, or in the case of a square, is the dimension along any side.  This is

1  confirmed by the mathematically accepted formula to determine the area of a
2  rectangle, which is length times width, or of a square, which is side length (width
3  and length being identical) squared.  Thus, "width" is different from the diagonal
4  dimensional (or diagonal length), which is the distance between opposite corners
5  of the rectangle or square and which Plaintiff proposes equating with "width" as
6  recited in the '622 patent.  If one applied Plaintiff's definition of "width" to the
7  formula to determine the area of a rectangle, an incorrect value would result,
8  confirming the unreasonableness of Plaintiff's proposed interpretation.
9  For example, a square having 12" side length (i.e., a width and a length of 12") has
10  a diagonal length of 16.97".  But the mathematically accepted area of said square
11  is 144 in.$^2$ (i.e., 12$^2$), not 287.9809 in.$^2$ (i.e., 16.97$^2$).  Thus, Plaintiff's proposed
12  interpretation of "width" is not only incorrect but is unreasonable as being contrary
13  to accepted mathematical principles[1].
14      9.    Second, upon information and belief, as of the filing of its Complaint,
15  Plaintiff knew that its interpretation of "width of said base plate" and "a non-planar
16  aft edge," as applied to Delta's accused product, would render at least claim 21 of
17  the '622 patent invalid in view of prior art known to Plaintiff as of the filing of the
18  Complaint.   In particular, in the Office action dated May 27, 2010, in the
19  application that matured into the '622 patent, the Examiner cited Figure 7 of
20  U.S. Patent No. 4,854,767 to Sasaki ("Sasaki") as disclosing "an upright plate (4)"
21  and "[a] base plate (2) for positioning on the ground, such that the upright plate (4)
22  extends perpendicularly to the base plate (2)."  Office action dated May 27, 2010,
23  page 2.  In rejecting claim 24, which corresponds to issued claim 21, the Examiner
24  asserted that "Sastaki [sic] discloses essentially all that is claimed, as put forth with
25  respect to claim 1 above, but does not disclose providing friction elements to

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

LEWIS ROCA

_____

[1] The '622 patent also does not attempt to re-define the definition of "width" nor does it clearly set forth a special definition of the term "width."

-10-

prevent horizontal movement of said barrier." *Id*., page 5.  The applicant responded to the May 27, 2010, Office action on October 26, 2010, stating that, with respect to pending claim 24, issued claim 21, "[a]greement was reached that claim language directed to the base plate being substantially parallel to the ground surface or that the arcuate aft edge extends along a length of the base plate edge overcomes the stated rejection."

10.    In spite of these representations to the U.S. Patent Office, Plaintiff now attempts renege on its agreement with the U.S. Patent Office by reading features out of claim 21 such that, under Plaintiff's own (flawed) interpretation, claim 21 would be invalid over Figure 7 of Sasaki under 35 U.S.C. § 102.



Figure 13[15]

**Plaintiff's Interpretation of Accused Product (Figure 13 of Complaint)**

122936387.2



**Figure 7 of Sasaki (annotations added to correspond to Plaintiff's Figure 13)**

11.    In other words, Plaintiff, by its Complaint, is attempting to improperly expand the scope of its patents beyond that which was granted by the USPTO, specifically to accuse Delta of infringement and to prevent Delta from making, using, selling, and offering for sale its competing TB100 product, rendering Delta unable to compete in the market for low-mass barricade solution.

12.    As a second example, upon information and belief, as of the filing of its Complaint, Plaintiff knew that at least claim 49 of the '866 patent is invalid as being anticipated by or obvious in view of the pre-grant publication of its parent patent, that is, the '622 patent.  In more detail, the application that would mature into the '866 patent was filed on July 21, 2010, as a continuation-in-part of the '622 patent.  The application that would mature into the '622 patent first published as U.S. 2009/0067923 A1 on March 12, 2009.  Thus, the pre-grant publication of the '622 patent, that is, U.S. 2009/0067923 A1, is prior art to the '866 patent under pre-AIA 35 U.S.C. § 102(b) because it was published on March 12, 2009, more than one year before the July 21, 2010 filing date of the '622 patent.

13.      By way of relevant background, asserted claim 21 of the '622 patent requires, in part, "said base plate of said modular barrier comprising a non-planar aft edge configured to frictionally engage the ground surface **to prevent horizontal movement of said modular barrier upon impact**."  (emphasis added).

14.      The apparent new matter of the '866 patent recited in asserted claim 49 of the '866 patent, when compared to the '622 patent, is encompassed by the following limitation:

> said base plate having an aft and fore edge wherein said fore edge, facing the impact direction, comprises a vehicle engaging interface in the form of a nonlinear configuration extending along a portion of said base plate fore edge **wherein, under sufficient impact forces, said modular barrier pivots about said aft edge** and said fore edge engages an impacting vehicle.

(emphasis added).

15.      First, claim 21 of the '622 patent and claim 49 of the '866 patent describe and claim devices that operate to stop vehicle intrusion according to mutually exclusive principles.  For example, claim 21 of the '622 patent recites a device that does not move horizontally upon impact to stop said vehicle while claim 49 of the '866 patent pivots such that the fore edge engages said vehicle to stop the vehicle.  Such pivoting action (i.e., rotational movement) necessarily includes both horizonal and vertical components.  Of particular interest, the portion of the claimed barrier above the pivot point would move horizontally rearward while the portion of the claimed barrier below the pivot point would move horizontally forward.  Yet, in spite of these mutually exclusive operating principles, Plaintiff accuses a single product, Delta's TB100 bollard, as infringing both claim 21 of the '622 patent and claim 49 of the '866 patent.

16.      Second, the '622 patent is entirely silent as to a barrier pivoting upon impact by a vehicle.  Consistent with claim 21 of the '622 patent, the '622 patent only describes barriers that prevent horizontal movement upon vehicle impact to

-13-

stop the vehicle.  For this same reason, the '622 patent does not inherently disclose a barrier that pivots to stop an impacting vehicle because, as explained above, pivoting necessarily includes some horizontal movement, which the '622 patent expressly describes as being prevented.

17.    Nevertheless, by inconsistently accusing Delta's TB100 bollard as being both "to prevent horizontal movement ... upon impact" and being to "pivot about said aft edge and said fore edge engages an impacting vehicle," the "vehicle engaging interface in the form of a nonlinear configuration" as recited in claim 49 of the '866 patent was disclosed more than one year before the filing date of the '866 patent as, for example, the hauler interface 80 as shown in, for example, FIGS. 4, 5, and 15 of U.S. 2009/006792 A1.  In more detail, as can be seen at least in FIGS. 4A and 15 of U.S. 2009/0067923 A1 (reproduced below), the hauler interface 80 extends along a portion of the base plate fore edge and has a non-linear configuration at least because it has a cylindrical configuration.  Although the '622 patent expressly describes the prevention of horizontal movement, Plaintiff's inconsistent infringement allegations made in its Complaint against Delta's TB100 bollard indicate, for the first time and many years after the filing of either of the patents-in-suit, that the same physical barrier can somehow both prevent horizontal movement and pivot upon impact of a vehicle, meaning that the prior disclosure of the embodiment shown in FIGS. 4, 5, and 15 of U.S. 2009/0067923 A1 anticipates or obviates at least claim 49 of the '866 patent.  For at least these reasons, upon information and belief, Plaintiff knew that asserted claim 49 of the '866 patent is invalid as anticipated by or obvious in view of the pre-grant publication of its own parent patent, also owned by Plaintiff and asserted in its Complaint.

/ / /

/ / /

/ / /

/ / /

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

LEWIS ROCA



LEWIS ROCA

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445



FIG. 4A

FIG. 15

122936387.2

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

LEWIS ROCA

18.     Upon information and belief, Plaintiff's knowingly overbroad interpretation of the '622 patent, rendering the only asserted claim thereof invalid over known prior art, and assertion of a known invalid claim of the '866 patent, examples of which are provided above, has an anticompetitive effect because of the exclusionary effects inherent to the issuance of a patent, which Plaintiff hopes to exercise against Delta to prevent Delta's entry into the market for low-mass barrier solutions.

19.     While Delta has offered products at the high-end of the vehicle barrier market for many years, so-called high-mass barriers designed to stop high-mass vehicles, the TB100 is Delta's first foray into the market for low-mass barriers designed to stop low-mass vehicles.  By wrongfully asserting infringement in a manner that is will beyond the scope of its rights, and done in bad faith, Plaintiff impedes Delta's entry into this particular market, which it was not in before the TB100 product.

20.     Further, on information and belief, Plaintiff commands a dominant share of the market for low-mass barriers to stop low-mass vehicles, at least with its Archer 1200 barrier, such that it operates with substantial market power.  Indeed, according to Govspend.com, where all governmental orders for certain products are recorded, Plaintiff has made about $5 million in sales to U.S. governmental entities per year since 2017.  While Plaintiff purports to sell three products on its website, its Archer 1200 Mobile Barrier is its primary product, suggesting that most of this $5 million in annual sales is in the low-mass barrier market.  Indeed, in a GSA contract document[2], Plaintiff describes its Archer 1200 barrier as "The keystone element of the anti-terrorism solution" and, on its own website,

---

2

https://www.gsaadvantage.gov/ref_text/47QSWA19D001F/0YA7XH.3U0KS5_47QSWA19D001F_MERIDIANRAPIDDEFENSEGROUP47QSWA19D001F.PDF (accessed Nov. 9, 2023)

1   holds itself out as "The Leader in Mobile Vehicle Barrier Solutions" above a

2   rotating image of its Archer 1200 barrier.  In another online news article[3], Eric

3   Alms, Plaintiff's "Rental CEO," is quoted as stating that "We've had explosive

4   growth with so many clients needing to rent, we found it necessary to dedicate a

5   full-time effort and a full-time staff to the rental side of our business."  The same

6   article states that "more than 1.2 million Archer 1200 Barriers [are] our on U.S.

7   streets during the last four years" and states that Plaintiff is "the nation's leading

8   perimeter safety and security mobile barrier company."

9       21.    On information and belief, there are three companies with products in

10  the low-mass barrier system market—Meridian, Pitagone, and Mifram.  Pitagon is

11  a European company, and Mifram is an Israeli company.  On information and

12  belief, Plaintiff holds a dominant share of at least the U.S. market for low-mass

13  barrier systems, well beyond that held by either Pitagona or Mifram.

14      22.    Further, to the extent Plaintiff has any meaningful competition in the

15  market for low-mass barrier systems, any such competitor cannot increase capacity

16  in the short run, and significant barriers to entry prevent new competitors from

17  entering this market.  As explained below in Delta's Counterclaims, significant

18  barriers to entry exist for all types of vehicle barriers, including the low-mass

19  barrier systems at issue here.  Primarily, substantially design, development, testing,

20  and certification requirements exist before a low-mass barrier system can be

21  marketed and sold.  And, in connection with governmental sales, which constitute

22  a substantial aspect of the vehicle barrier market, a supplier must not only offer a

23  certified product but generally needs to show a satisfactory time-in-business, such

24  as five years, before being approved by the GSA for sales to governmental entities.

25  These factors, alone or in combination, create substantial barriers to entry into the

26  _____

27  [3] https://www.einpresswire.com/article/633519003/meridian-continues-
    nationwide-expansion-by-creating-separate-rental-and-sales-divisions

28  (accessed Nov. 9, 2023)

-17-

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

LEWIS ROCA

1   market for low-mass vehicle barriers, effectively restricting competition to only a

2   handful of companies, two of which Plaintiff is currently suing.

3       23.    Therefore, because Plaintiff is attempting to improperly broaden the

4   scope of the '622 patent beyond the scope as granted by U.S. Patent Office and to

5   assert a known invalid claim of the '866 patent in a manner that has anticompetitive

6   effects, it has committed patent misuse.

7                    **FIFTH AFFIRMATIVE DEFENSE**

8                      **(Failure to State a Claim)**

9       24.    Upon information and belief, Plaintiff's patent infringement claims do

10  not meet the heightened pleading standards required under *Twombly* and *Iqbal*

11  because Plaintiff fails to allege facts as to how any of Delta's products, including

12  the TB100, either directly or indirectly, literally or under the doctrine of

13  equivalents, willfully or otherwise, infringe upon any claims of the '622 patent, or

14  the '866 patent.

15

16          **DELTA'S FIRST AMENDED COUNTERCLAIMS**

17  Defendant and Counterclaimant Delta Scientific Corporation ("Delta") asserts its

18  amended counterclaims against Counterdefendant Meridian Rapid Defense Group

19  LLC ("Meridian") as follows:

20                          **PARTIES**

21      1.     Delta Scientific Corporation is a California Corporation with its

22  headquarters at 40355 Delta Lane, Palmdale, California 93551.

23      2.     Upon information and belief,  Meridian Rapid Defense Group is a

24  California limited liability company with its principal place of business at

25  177 E. Colorado Blvd., Suite 200, Pasadena, California 91105.

26

27

28

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

LEWIS ROCA

122936387.2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

LEWIS ROCA

**JURISDICTION AND VENUE**

3.      This Court has subject matter jurisdiction under 38 U.S.C. § 1331 and 1338(a) because this complaint arises under the federal patent laws of the United States, 35 U.S.C. § 1 et seq.

4.      Meridian is subject to personal jurisdiction in this District arising out of the Complaint that Meridian filed in this Court, and Meridian's significant contacts with the forum.  Upon information and belief, Meridian has systematic and continuous contacts with this District, regularly transacts business in this District, maintains a regular and established place of business in this District, and regularly and purposefully avails itself of the benefits of this District.

5.      Venue is proper in this judicial district under 28 U.S.C. § 1391.

**DELTA SCIENTIFIC AND ITS PRODUCTS**

6.      Delta is a global leader in high security bollards and vehicle barriers. The vast majority of Delta's products are permanently installed vehicle barriers, such as those that are buried in the ground.  Such large and complicated barrier systems are designed to stop high-mass vehicles.  These systems are so-called "high-mass barriers to stop high-mass vehicles."

7.      There are other situations, however, where a barrier may be needed or desired but where a permanent barrier is not feasible, either for cost reasons or due to the temporal nature of the need, for example, during a convention or sporting event.  For these situations, Delta offers high-mass, portable barriers, such as the MP5000, DSC1000, and DSC1100 barriers.  These barriers are not installed in-ground and can be removed after being placed.  However, these portable barriers are also "high mass barriers to stop high-mass vehicles."

8.      Delta, however, recognized a need in the market for a competitive low-cost, highly portable barrier for lower-security environments and designed to stop lower mass vehicles.  Hence, Delta developed its TB100 bollard product. The TB100 bollard is a "low-mass barrier to stop low-mass vehicles."  Delta was

-19-

granted two U.S. utility patents and one U.S. design patent covering the TB100 product.[4]

9.      As is necessary with all serious entrants into the field of vehicle barriers, Delta spent significant capital to design, develop, test, and certify its TB100 bollard.  Indeed, to be considered a true vehicle barrier, certain industry-standard tests must be conducted and the product certified based on its ability to stop different classes of vehicles.  These high barriers to entry, and the necessary strong base of institutional knowledge to design effective vehicle barriers, drive up the cost of introducing new vehicle barriers and limit the overall number of competitors in the field in a time when vehicular attacks are increasing worldwide.

## DELTA'S COUNTERCLAIM I: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 7,918,622

10.      Delta realleges and incorporates by reference its First and Fourth Affirmative Defenses and  Counterclaim Paragraphs 6 through 9 as if fully set forth herein.

11.      Delta counterclaims against Meridian pursuant to the patent laws of the United States, Title 35 of the United States Code, and the Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202.

12.      Meridian claims to be the owner of the '622 patent, entitled "Portable Perimeter Defense Systems," filed on May 6, 2008, and issued on April 5, 2011. The  '622  patent  on  its  face  identifies  as  inventor  Peter  D.  Whitford. Upon information and belief, the '622 patent was assigned to Meridian Rapid Defense Group LLC on August 29, 2023.

13.      An actual and justiciable controversy exists between Delta and Meridian with respect to the '622 patent because Meridian has brought an action against Delta alleging that Delta infringes the '622 patent by making, using,

---

[4] U.S. Patent Nos. 10,407,852 and 10,941,531 and U.S. Design Patent No. 903,906.

offering for sale, selling and/or importing certain barriers, including the TB100, which allegation Delta fully denies. Absent a declaration of noninfringement, Meridian will continue to wrongfully assert the '622 patent against Delta, and thereby cause Delta irreparable injury and damage.

14. Delta has not infringed the '622 patent, either directly or indirectly, literally or under the doctrine of equivalents, willfully or otherwise, and is entitled to a declaration to that effect.

## DELTA'S COUNTERCLAIM II: DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 7,918,622

15. Delta realleges and incorporates by reference its Second and Fourth Affirmative Defenses and Counterclaim Paragraphs 6 through 9 as if fully set forth herein.

16. Delta counterclaims against Meridian pursuant to the patent laws of the United States, Title 35 of the United States Code, and the Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202.

17. Meridian claims to be the owner of the '622 patent, entitled "Portable Perimeter Defense Systems," filed on May 6, 2008, and issued on April 5, 2011. The '622 patent on its face identifies as inventor Peter D. Whitford. Upon information and belief, the '622 patent was assigned to Meridian Rapid Defense Group LLC on August 29, 2023.

18. An actual and justiciable controversy exists between Delta and Meridian with respect to the '622 patent because Meridian has brought an action against Delta alleging that Delta infringes the '622 patent by making, using, offering for sale, selling and/or importing certain barriers, including the TB100, which allegation Delta fully denies. Absent a declaration of invalidity, Meridian will continue to wrongfully assert the '622 patent against Delta, and thereby cause Delta irreparable injury and damage.

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

LEWIS ROCA

122936387.2

19.     The '622 patent is invalid under the provisions of Title 35 of the United States Code, including but not limited to Sections 102, 103 and/or 112, and Delta is entitled to a declaration to that effect.

### DELTA'S COUNTERCLAIM III: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 8,215,866

20.     Delta realleges and incorporates by reference its First and Fourth Affirmative Defenses and Counterclaim Paragraphs 6 through 9 as if fully set forth herein.

21.     Delta counterclaims against Meridian pursuant to the patent laws of the United States, Title 35 of the United States Code, and the Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202.

22.     Meridian claims to be the owner of the '866 patent, entitled "Portable Perimeter Defense Barrier And System," filed on July 21, 2010, and issued on July 10, 2012.  The '866 patent on its face identifies as inventors Peter D. Whitford.  Upon information and belief, the '866 patent was assigned to Meridian Rapid Defense Group LLC on August 29, 2023.

23.     An actual and justiciable controversy exists between Delta and Meridian with respect to the '866 patent because Meridian has brought an action against Delta alleging that Delta infringes the '866 patent by making, using, offering for sale, selling and/or importing certain barriers, including the TB100, which allegation Delta fully denies.  Absent a declaration of noninfringement, Meridian will continue to wrongfully assert the '866 patent against Delta, and thereby cause Delta irreparable injury and damage.

24.     Delta has not infringed the '866 patent, either directly or indirectly, literally or under the doctrine of equivalents, willfully or otherwise, and is entitled to a declaration to that effect.

122936387.2

## DELTA'S COUNTERCLAIM IV: DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 8,215,866

25.     Delta realleges and incorporates by reference its Second and Fourth Affirmative Defenses and Counterclaim Paragraphs 6 through 9 as if fully set forth herein.

26.     Delta counterclaims against Meridian pursuant to the patent laws of the United States, Title 35 of the United States Code, and the Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202.

27.     Meridian claims to be the owner of the '866 patent, entitled "Portable Perimeter Defense Barrier And System," filed on July 21, 2010, and issued on July 10, 2012.  The '866 patent on its face identifies as inventors Peter D. Whitford. Upon information and belief, the '866 patent was assigned to Meridian Rapid Defense Group LLC on August 29, 2023.

28.     An actual and justiciable controversy exists between Delta and Meridian with respect to the '866 patent because Meridian has brought an action against Delta alleging that Delta infringes the '866 patent by making, using, offering for sale, selling and/or importing certain barriers, including the TB100, which allegation Delta fully denies.  Absent a declaration of invalidity, Meridian will continue to wrongfully assert the '866 patent against Delta, and thereby cause Delta irreparable injury and damage.

29.     The '866 patent is invalid under the provisions of Title 35 of the United States Code, including but not limited to Sections 102, 103 and/or 112, and Delta is entitled to a declaration to that effect.

## DELTA'S COUNTERCLAIM V: UNFAIR COMPETITION UNDER CALIFORNIA BUSINESS & PROFESSIONS CODE SECTIONS 17200 *ET SEQ.*

30.     Delta realleges and incorporates by reference its Fourth Affirmative Defense and  Counterclaim Paragraphs 6 through 9 as if fully set forth herein.

122936387.2

31.     Meridian has engaged in bad faith conduct including, but not limited to, knowingly making claims of infringement in bad faith and committing patent misuse as alleged previously as its Fourth Affirmative Defense.

32.     Meridian and Delta are direct competitors.

33.     On information and belief, and as alleged above, Meridian was aware that its overbroad interpretation of at least claim 21 of the '622 patent is beyond the scope thereof as granted by the USPTO, yet falsely accused Delta of infringement based on such interpretation when it knew that such an interpretation was not colorable and, indeed, renders the claim invalid over prior art known to Meridian. Separately, on information and belief, Meridian was aware that its asserted claim 49 of the '866 patent is invalid as anticipated by or obvious in view of the pre-grant publication of its own parent patent. Meridian had no good faith basis before, and has no good faith basis now, to interpret claim 21 of the '622 patent in the manner it has to accused Delta of infringement of the same or to assert claim 49 of the '866 at all.   Meridian's willful conduct, and false accusations of infringement have harmed Delta, and will continue to harm Delta.  For example, Meridian is using the flawed interpretation of the '622 patent and a known invalid claim of the '866 patent in an attempt to remove Delta's competing, accused products from the marketplace or impose a reasonable royalty upon Delta for the sale of every accused product. Upon information and belief, Meridian's actions constitute unfair competition including but not limited to, misusing the Asserted Patents.

34.     Meridian's knowing assertion of baseless claims of infringement, in bad faith, and its acts of patent misuse are in violation of the relevant patent laws and are unfair and/or unlawful  in violation of Cal. Bus. & Prof. Code Sections 17200 *et seq.*  To be clear, Delta does not allege that the mere assertion of patent infringement claims constitutes unfair competition, but instead, alleges that Meridian's knowing assertion of baseless claims of infringement against a new

-24-

direct competitor, in bad faith, and Meridian's acts of patent misuse, which harms competition, are unlawful and/or unfair.

35.    Delta has been harmed and damaged by Meridian's unfair competition.

## PRAYER FOR RELIEF

WHEREFORE, Delta respectfully prays for judgment as follows:

A.    That Meridian's Complaint be dismissed with prejudice, that judgment as to all such claims be entered in favor of Delta and against Meridian, and that any and all relief requested by Meridian be denied;

B.    That judgment shall be entered in favor of Delta and against Meridian, on each of Delta's Counterclaims;

C.    That each and every claim of the '622 patent, and the '866 patent be declared not infringed, invalid, and unenforceable;

D.    All recoverable monetary relief including but not limited to actual damages;

E.    Disgorgement of profits;

F.    Restitution;

G.    An injunction against acts of unfair competition;

H.    Pre-judgment and post-judgment interest;

I.    A determination that this is an exceptional case and an award to Delta of its costs in this action, including its reasonable attorneys' fees under at least under 35 U.S.C. § 285 and any other applicable authority; and

J.    That Delta be awarded such other and further relief as the Court deems proper.

/ / /

/ / /

/ / /

-25-

122936387.2

1    Dated:  November 10, 2023              Respectfully submitted,

2                                          LEWIS ROCA ROTHGERBER
                                           CHRISTIE LLP
3
                                      By   _/s/G. Warren Bleeker_____
4                                          Constantine Marantidis
                                           G. Warren Bleeker
5                                          Kyle W. Kellar

6                                          Attorneys for Defendant and
                                           Counterclaimant
7                                          DELTA SCIENTIFIC CORPORATION

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

LEWIS ROCA

-26-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JURY DEMAND**

Delta Scientific Corporation demands a trial by jury on all issues so triable.

Dated:  November 10, 2023

Respectfully submitted,

LEWIS ROCA ROTHGERBER
CHRISTIE LLP

By  */s/G. Warren Bleeker*
Constantine Marantidis
G. Warren Bleeker
Kyle W. Kellar

Attorneys for Defendant and
Counterclaimant DELTA SCIENTIFIC
CORPORATION

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

LEWIS ROCA

-27-

122936387.2